524 P.2d 506
**STATE of Arizona, Appellee,**
**v.**
**John Thomas PARKER, Appellant.**
**No. I CA–CR 623.**

Court of Appeals of Arizona,
Division 1,
Department A.
July 18, 1974.
Rehearing Denied Aug. 19, 1974.

N. Warner Lee, Atty. Gen., Gary K. Nelson, Former Atty. Gen. by R. Wayne Ford, Asst. Atty. Gen., for appellee.

Ross P. Lee, Public Defender for Maricopa County by Paul J. Prato, and John F.

Foreman, Deputy Public Defenders, for appellant.

John Thomas Parker, in pro per.

## OPINION

STEVENS, Judge.

John Thomas Parker (defendant) was tried and convicted of burglary in the first degree and assault with intent to commit rape. He was sentenced to the Arizona State Prison and now appeals, to this Court.

The opening brief presents two questions for review as follows:

"Question No. 1

"Did the trial court err in failing to make a finding on the record that defendant was conpetent to make an intelligent waiver of his right to counsel?

"Question No. 2

"Were remarks of the prosecutor during argument prejudicial error?"

The defendant filed a supplemental brief pro se, presenting the following three questions:

"Question No. 3

"Should the defendant have been granted a twelve-man jury instead of an eight-man jury?

"Question No. 4

"Was the butcher knife properly admitted into evidence?

"Question No. 5

"Was it an abuse of discretion by the trial court to allow police officer to remain in the courtroom after the defendant invoked the rule and then to testify at the end of the state's case?"

The defendant met the victim and her niece in the early morning hours of 25 April 1973, in a Phoenix bar. The defendant and the niece went to the victim's house to have a few drinks but subsequently, due to an argument, the victim asked him to leave. He returned to the house a few hours later. The victim was awakened when she heard scratching on the

screen door and called the police, stating that someone was trying to break into her house. The defendant, armed with a knife, appeared in her room and forced her to disrobe. The victim stalled his advances until the police arrived and apprehended the defendant.

At the defendant's preliminary hearing, he was represented by a Deputy Public Defender. The defendant was bound over for trial.

At the trial, the defendant expressed his desire to represent himself and to waive the right to counsel.

## COMPETENCY TO WAIVE COUNSEL

On 27 June 1973, The Honorable Rufus C. Coulter, Jr. conducted a hearing to decide defendant's motion to represent himself in subsequent criminal proceedings. Some of the factors to be considered in this determination are the defendant's age, education, literacy, prior court experience, mental state, and inducements. It is the totality of the circumstances which controls. Application of Estrada, 1 Ariz.App. 348, 403 P.2d 1 (1965).

The record of this case reveals that the court conducted a comprehensive examination of the defendant and attempted to dissuade him from undertaking his own defense. The court explained the charges to the defendant, the permissible sentences that could be imposed, asked about his age, determined that the defendant had a year and a half of college education, that he worked for a newspaper and that, in the defendant's words, had experience in "court procedure, court etiquette." Furthermore, the court asked about any mental problems, any promises or threats made as inducements and to each the defendant answered in the negative. Finally, the court ordered the Deputy Public Defender to stay with the defendant to advise him throughout the trial. The record further shows that the defendant and the Deputy Public Defender conferred with each other before the defendant asked his questions. Under the facts of the case, we find that

the defendant was competent to make an intelligent and knowing waiver of his right to counsel.

## PROSECUTOR'S REMARKS

The defendant met the victim through the victim's niece. Several references were made to the niece during testimony at the trial, but she did not appear as a witness. During closing arguments, both the defendant and the prosecution made references to her and her possible testimony. The defendant now argues that the comments by the prosecutor were improper and prejudicial. In order to place the prosecutor's comments into perspective, we will quote from the record.

After the prosecutor made his closing arguments, the defendant proceeded by stating that the prosecutor promised that the niece:

"* * * would be a witness for the State against me. You heard [the niece] was subpoenaed, was served with a subpoena, and just yesterday, the day before trial she disappears. I'm going to leave that to your imagination what happened to [the niece], but remember [the niece] was a witness for the State, supposed to be against me."

Later, he returned to the subject of the niece:

"But she didn't come. There is nothing in the world about my beating up some poor defenseless woman. He knows he can't bring [the niece] in here. This is her witness, and he can't bring that woman to court because he is going to prove that I never left the bedroom * * *."

During rebuttal, the prosecution made the following comments in response:

"What about [the niece], she is not here, the State is hiding her? Please keep this in mind, that [the niece] is not the victim. It's not her house trailer. It's not her that was sliced in the back. It's not her that was almost raped, at least not the subject of this particular charge.

It was not [the niece] that happened to meet the defendant and made the unfortunate decision to invite him back to her home."

and in explaining her absence, the prosecution said:

"We tried. We have made our record, so to speak. I have indicated through the evidence that the investigator tried to get her in. We couldn't and obviously the State wanted her in as the State's witness. She would have given favorable testimony to show in fact that the defendant was guilty, but we couldn't get her. Mr. Parker didn't even try the same thing."

■ The defendant did not object to these comments at the trial. The established rule in Arizona is that if improper statements are made by counsel during the trial, the opposition must object so that the court may make the necessary correction by proper instruction, State v. Gonzales, 105 Ariz. 434, 466 P.2d 388 (1970); State v. Boozer, 80 Ariz. 8, 291 P.2d 786 (1955). Claims of error will not be considered on appeal where the trial court has not been granted the opportunity to rule on an issue so as to correct the possible errors. State v. Coward, 108 Ariz. 270, 496 P.2d 131 (1972); State v. Deschamps, 105 Ariz. 530, 468 P.2d 383 (1970).

■■ In light of the fact that defendant represented himself, although with the advice of counsel, we might explain that the prosecutor's remarks, while not the most commendable, are acceptable under the doctrine of "invited error" recognized by the courts of this State. State v. Smith, 101 Ariz. 407, 420 P.2d 278 (1966); State v. Gortarez, 98 Ariz. 160, 402 P.2d 992 (1965). "The doctrine provides that where remarks of the prosecuting attorney, even though improper, are invited or occasioned by accused counsel, or are in reply to or in retaliation for his acts or statements they are generally not grounds for reversal." State v. Smith, 101 Ariz. at 409, 420 P.2d at 280. The above discussion of the record clearly demonstrates that the

remarks were made in response to the defendant's statements. The defendant, even though representing himself, cannot complain of matters that crept into the case through his own misconduct. State v. Cufio, 12 Ariz.App. 461, 471 P.2d 763 (1970); State v. Carter, 1 Ariz.App. 57, 399 P.2d 191 (1965).

## JURY

◾ The defendant was charged with burglary, first degree, with a possible sentence of not less than one nor more than fifteen years, A.R.S. § 13–302 (Supp. 1973); and assault with intent to commit rape, with a possible sentence of not less than one nor more than fourteen years, A.R.S. § 13–252 (1956). Upon admission or proof of a prior felony conviction, the trial court is required to impose a certain minimum sentence and the maximum may range to a possible sentence of life imprisonment, A.R.S. § 13–1649(A)(1) (Supp. 1973).

The Arizona Constitution, Art. 2, § 23 provides:

"The right of trial by jury shall remain inviolate. Juries in criminal cases in which a sentence of death or imprisonment for thirty years or more is authorized by law shall consist of twelve persons."

Defendant argues that he should have been granted a 12-man jury because he was technically facing a life sentence since the State's motion to add a prior felony conviction had still not been disposed of by the trial court at the time of trial. We do not agree with defendant's contention that he was entitled to a jury of twelve. The record discloses that the trial court denied the State's motion to add allegations of prior conviction and, therefore, A.R.S. § 13–1649 was inapplicable to the case at bar.

◾ The Attorney General suggests that Art. 2, § 23 only applies to the statutorily authorized possible sentence per charge or count. Under this view, one looks to each individual charge or count and if each statutorily authorized sentence is less than

thirty years, then the defendant is not entitled to a jury of twelve, regardless of what the total possible sentence may be. We disagree. The Constitution is clearly addressed to the total possible authorized sentence in a criminal case, here twenty-nine years, and not to the possible sentence on each count which a defendant faces.

◾ Defendant next argues that there is no rational basis for the thirty-year cutoff point for a 12-man jury. He claims that he was denied the equal protection of the laws as a result.

The Supreme Court of the United States has held "that the States are free under the Federal Constitution to try defendants with juries of less than 12 men." Johnson v. Louisiana, 406 U.S. 356, 364, 92 S.Ct. 1620, 1625, 32 L.Ed.2d 152, 160 (1972), citing Williams v. Florida, 399 U.S. 78, 90 S. Ct. 1893, 26 L.Ed.2d 446 (1970). We hold that a thirty-year cutoff point is reasonable for the purpose of expediting the criminal justice system while preserving the right of the accused to a fair and impartial jury trial.

## ADMISSION OF THE KNIFE

The defendant was convicted of assault with intent to commit rape. In connection with this crime, the state introduced, over the objections of the defendant, the knife used in the assault. On appeal, the defendant claims that the admission of the knife was erroneous because it had little probative value, was inflammatory and that it lacked proper foundation.

◾ Assault is an included offense in the charge of assault with intent to commit rape. A.R.S. § 13–252 (1956). In the case at bar, the State proved the assault through the testimonial evidence of the victim supported by demonstrative evidence, the knife, and pictures of the victim showing the cut on her back inflicted by that particular knife. In a prosecution for assault, and consequently of assault with intent to commit rape, it is proper to admit in evidence a knife used in the assault when it supports a material fact. *See gen.*

Udall, Arizona Law of Evidence § 131 (1960). In this case, the knife was certainly probative because it logically tends to prove a material fact, the fact that the assault took place and it corroborates the victim's testimony. Defendant claims that the admission of the knife in evidence was inflammatory. We disagree.

■ Defendant further claims that the knife should not have been admitted because the State failed to establish a proper foundation for its admission. In the case at bar the prosecution established the proper foundation for the admission of the knife through its identification by the victim and one of the police officers present at the scene of the crime. Furthermore, the State established the chain of possession. State v. Noble, 109 Ariz. 539, 514 P.2d 460 (1973); State v. Rascon, 97 Ariz. 336, 400 P.2d 330 (1965). The fact that the prosecution did not have expert witnesses to testify that the knife had human blood stains on it relates to the weight to be given such evidence and not its admissibility. The trial court is allowed a discretion in determining the relevancy and admissibility of evidence, State v. Turner, 92 Ariz. 214, 375 P.2d 567 (1962); State v. Wallace, 83 Ariz. 220, 319 P.2d 529 (1957), and the record clearly supports the trial court's decision.

### THE RULE

■ In the last question, defendant argues that the trial court committed a prejudicial error in allowing a police officer, who was assisting the prosecution during the trial, after the defendant invoked the rule of exclusion, to remain in the courtroom and testify at the close of the State's case.

"Exclusion of witnesses is within the sound discretion of the trial court whose decision will not be disturbed unless an abuse of discretion and the resulting prejudice is shown." State v. Denton, 101 Ariz. 455, 458, 420 P.2d 930, 933 (1966); accord, State v. Sowards, 99 Ariz. 22, 406 P.2d 202 (1965); State v. Armenta, 98 Ariz. 152, 402 P.2d 571 (1965).

In the present case, there is no showing of prejudice, just the claim that it was prejudicial to allow the officer to testify at the close of the State's case. We have reviewed the record, read the officer's testimony and find no prejudice to the defendant nor an abuse of discretion by the trial court.

Finding no prejudicial error in the record, the judgment is affirmed.

DONOFRIO, P. J., and OGG, J., concur.