547 P.2d 30

**STATE of Arizona, Appellee,**

v.

**Ricardo G. MORENO, Appellant.**

**No. I CA–CR 1082.**

Court of Appeals of Arizona,
Division 1,

Department A.

March 23, 1976.

Rehearing Denied May 5, 1976.

Review Denied June 2, 1976.

Bruce E. Babbitt, Atty. Gen., by William J. Schafer III, Chief Counsel, Teresa S. Thayes, Asst. Attys. Gen., Phoenix, for appellee.

Ross P. Lee, Maricopa County Public Defender, by Garth V. Smith, Asst. Public Defender, Phoenix, for appellant.

## OPINION

FROEB, Judge.

After a trial by jury, appellant was convicted of possession of heroin for sale and placed on probation for five years. Pursuant to a warrant, obtained through information supplied by a confidential informant, the police searched appellant's apartment and found 10.5 grams of heroin. Appellant's defense to the charge was that this amount of heroin did not create a presumption of possession for sale and that the heroin did not belong to him, but rather to his roommate.

On appeal appellant raises 10 issues:

1. whether the trial court erred in denying appellant's motion to remand for a new preliminary hearing;

2. whether the trial court erred in denying appellant's motion to compel discovery of the identity of the confidential informant;

3. whether the trial court erred in denying appellant's motion to suppress evidence because the affidavit did not sufficiently establish the informant's reliability;

4. whether the trial court erred in denying appellant's motion for production and inspection of fingerprints and fingerprint cards used by the State's expert for comparison in determining whether the informant handled the heroin;

5. whether the trial court erred in denying appellant's motion to dismiss for violation of the speedy trial rules;

6. whether the trial court erred in refusing to ask all of appellant's questions on voir dire;

7. whether opinion testimony by a police officer that a minimum quantity of heroin indicated that the holder was more interested in selling it than in having it for his own use was error;

8. whether the trial court erred in admitting the heroin without the prosecution establishing a proper chain of custody;

9. whether the prosecutor improperly commented on appellant's exercise of his privilege against self-incrimination and his failure to testify;

10. whether the prosecutor made improper remarks to the jury.

## PRELIMINARY HEARING

At the preliminary hearing the State presented the arresting police officer as its only witness. The officer testified that a chemist had told him that she had examined one of the packages which had been seized in the search and that it contained heroin.

Appellant now claims that Rule 5.4(c), Arizona Rules of Criminal Procedure, requires that hearsay evidence from experts can only be admitted through the use of a written report. The State claims that expert testimony may be presented by written report, but, pursuant to Rule 5.4(c)(3), it may also be presented by way of verbal hearsay if the declarant is expected to testify at trial. However, we need not decide this question, because proper objection to this evidence was not made at the time of the preliminary hearing.

It is well established that without proper objection at the trial or hearing level, an error in the admission of evidence is not subject to review unless it constitutes fundamental error. *State v. Tostado,* 111 Ariz. 98, 523 P.2d 795 (1974); *State v. Endreson,* 109 Ariz. 117, 506 P.2d 248 (1973). Here, appellant was eventually provided a copy of the chemist's report and the chemist testified at the trial. Accordingly, the admission of this hearsay testimony at the preliminary hearing does not constitute fundamental error.

## DISCLOSURE OF IDENTITY OF INFORMANT

Information received from an unidentified informant formed the basis for the issuance of the search warrant in this case. In an attempt to discover the identity of the informant, appellant called three witnesses, one of whom he suspected to be the informant, to testify at a hearing on his motion to suppress. Each of the witnesses denied being the informant. Appellant then asked Detective Robinson, the arresting law enforcement officer, if any of these witnesses had committed perjury. Robinson refused to answer this question on the grounds that it would reveal the identity of his informant. In his brief, the sole reason given by appellant for desiring this information was to impeach Robin-

son's affidavit which formed the basis for the issuance of the search warrant.

The Arizona Supreme Court has held that:

. . . When the issue before the trial court is not the guilt or innocence of a defendant but probable cause for an arrest or search, the State need not be required to disclose an informant's identity if the trial court is convinced by the evidence submitted in court and subject to cross-examination that the officers did rely in good faith upon credible information supplied by a reliable informant. *McCray v. Illinois,* 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967). The real issue involved in the determination of an issue such as probable cause is not whether the informant lied to the officers but whether the affiant is truthful in his recitation of what he was told and whether that information is credible and reliable. [*State v. Keener,* 110 Ariz. 462, 520 P.2d 510 (1974)]

In the current case Robinson was subjected to cross-examination and the evidence is sufficient to support the trial court's finding that he relied in good faith on credible information supplied by a reliable informant.

## AFFIDAVIT FOR SEARCH WARRANT

Appellant contends that the affidavit for the search warrant is insufficient because it failed to establish that the informant was reliable as required by *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). The affidavit stated:

The affiant believes the informant to be reliable because: The confidential reliable informant has supplied your affiant with at least 50 items of information pertaining to narcotics trafficers [sic] and users which your affiant has personally verified by independent means.

The affiant believes the information given him is reliable because: The confidential reliable informant has on at least

1 (one) occassion [sic] supplied your affiant with a sample of narcotic drug (heroin) and identified the drug properly. The confidential reliable informant is famaliar [sic] with the narcotic drug, heroin, through personal use and experience.

■ The fact that an informant has proven reliable in the past is sufficient to establish the required reliability under *Spinelli. State v. Watling,* 104 Ariz. 354, 453 P. 2d 500 (1969) ; *State v. White,* 13 Ariz.App. 265, 475 P.2d 750 (1970). The affidavit indicates that the informant had provided Robinson with 50 items of information which had proved to be reliable in the past. However, appellant argues that the bare allegation that the informant had provided reliable information in the past is not sufficient to establish reliability in the absence of any arrests or convictions resulting from that information. Appellant cites no cases or authority for this proposition. In fact, *Watling,* supra, and *White,* supra, indicate that this is not an absolute requirement, but that other reliable information is sufficient.

■ Appellant also argues that the informant did not supply Robinson with heroin, but rather that Robinson purchased the heroin from the informant. The purpose of the statement that the informant had supplied heroin in the past was to establish that the informant had experience with and could identify heroin. For this purpose, it does not matter whether the informant "supplied" or "sold" the heroin to Robinson. Accordingly, appellant's third ground on appeal is without merit.

## PRODUCTION OF FINGERPRINT CARD

■ Appellant next contends that the prosecution should have been required to produce all of the fingerprint cards submitted to the State's fingerprint expert for comparison with the latent prints taken from the packets of heroin. However, pursuant to appellant's request, one of the fingerprint cards used in the comparison

was that of the informant. This comparison was made to establish whether the disclosure of the informant was required under Rule 15.4(b).

The State offered to produce all of the fingerprint cards except that of the informant. It refused to produce the informant's fingerprint card because such production would reveal the informant's identity. Appellant's only authority for his argument that the fingerprint card of the informant should have been produced is Rule 15.1(c), which provides that the prosecutor shall "make available to the defendant for examination, testing and reproduction any specified items contained in the list submitted under Rule 15.1(a)(4)." Rule 15.1(a)(4) includes "all papers, documents, photographs or tangible objects which the prosecutor will use at trial or which were obtained from or purportedly belong to the defendant." Since the fingerprint card did not fall within these requirements, it appears that the prosecution was not expressly obligated to produce the card under the scope of the rule. Of course, if this material tended to mitigate or negate appellant's guilt, it would have been discoverable under Rule 15.1(a)(7). However, appellant does not argue this point on appeal and there is no evidence in the record to show how this information would have negated or mitigated appellant's guilt.

## SPEEDY TRIAL RULES

■ Appellant's trial was originally scheduled for November 14, 1974. This date was the 90th day from the date of appellant's arraignment and the last day in which the appellant could be tried without violating the rules relating to speedy trial. See Rule 8.2. On November 13, appellant's attorney delivered a motion to continue to the prosecution and to the trial judge on the ground that the State had not complied with the court's discovery order. Apparently, on the morning of November 14, the prosecution complied with that order and appellant attempted to withdraw his motion

to continue. However, the court found the State was justified in relying on appellant's motion to continue and in not being prepared for trial on the 14th and ruled that the delay was caused by appellant. The court then set trial for November 19. Appellant now argues that this delay was not occasioned by him and should not be an excluded period under Rule 8.4.

■ Appellant argues that the trial was delayed because the State did not promptly comply with the court's discovery order. However, there are numerous sanctions specified in the rules if the State fails to comply with such an order. Of the sanctions, the only one sought by appellant was the granting of a continuance. In making this request, appellant led both the State and the court to believe that trial would not take place on November 14 and that the period of delay would be an excluded period under the rules. A defendant should not be permitted to turn his motions on and off at will when to do so prejudices the prosecution's case. Therefore, the court was correct in ruling that the period from November 14 to November 19 was an excluded period.

## REQUESTED JURY VOIR DIRE QUESTIONS

■ Appellant contends that the trial court approved only 38 of the 65 written voir dire questions requested by appellant. He further contends that five questions which were approved by the court were not asked. He concludes that the failure to ask those questions is reversible error. Rule 18.5(d) provides "The court shall conduct the *voir dire* examination, putting to the jurors all appropriate questions requested by counsel." The Arizona Supreme Court has stated:

. . . We feel the language "appropriate questions" in Rule 18.5(d) is not meant to be mandatory. Rather the rule retains long standing Arizona law that "[t]he extent of examination must necessarily be left to the sound discretion of the trial court to determine the presence

or absence of bias or prejudice." *State v. Wallace,* 83 Ariz. 220, 319 P.2d 529 (1957). As the comment to Rule 18.5 states "this rule places the primary responsibility for conducting the jury examination on the court rather than on counsel." [*State v. Riggins,* 111 Ariz. 281, 285, 528 P.2d 625, 629 (1974).]

In *Riggins,* the court held that confusing and redundant questions need not be asked by the trial court. See also *State v. Molina,* 5 Ariz.App. 492, 428 P.2d 437 (1967). In the present case, the majority of the questions requested by appellant were substantially given by the trial court. Further, the questions which were refused by the court were not of such a nature as to require a reversal for failure to give them.

## EXPERT WITNESS

■ During the examination of Detective Bruce, the prosecutor asked Bruce how he would differentiate between situations in which heroin was possessed for the purposes of use and those in which it was possessed for the purposes of sale. Appellant objected that Bruce was not an expert in this field and that for him to answer this question would invade the province of the jury. The trial court overruled appellant's objection. Bruce then testified:

> Based on my experience I would consider anyone who has in his possession over a half a gram to a gram of heroin, consider him to be more interested in trafficking then [sic] having it for his own use. My experience has been that for personal use based upon people I have arrested, and one thing or another, they generally have, maybe a hundred to three or four hundred milligrams in their possession at one time.

On appeal, appellant contends that expert testimony of this type is not permissible. However, appellant's contention has been specifically rejected by the Supreme Court in *State v. Keener,* 110 Ariz. 462, 520 P.2d 510 (1974). In *Keener,* a police officer with six years experience in narcotics investigation and other training was allowed to testify that the quantity of drugs possessed by the defendant indicated that they were possessed for sale rather than for personal use. The court stated:

> Whether a witness is qualified as an expert witness rests in the sound discretion of the trial court, and that decision will not be reviewed unless there is a showing of abuse of discretion. *State v. Melot,* 108 Ariz. 527, 502 P.2d 1346 (1972); *Carrel v. Lux,* 101 Ariz. 430, 420 P.2d 564 (1966). An expert witness is one who possesses skill and knowledge superior to that of men in general, and it is the rule in this State that an expert may state his opinion upon a subject even though it may involve an opinion on an ultimate fact to be determined by the trier of fact. [110 Ariz. at 465–466, 520 P.2d at 513.]

In the present case, Bruce was a special agent for the Drug Enforcement Administration, United States Department of Justice. He had worked in this capacity for four years and was currently the supervisor of a group of six agents. He testified that he had taken a 10 week training course given by the Drug Enforcement Administration prior to beginning his work, and that over his career he had occasion to work with at least 300 heroin cases. Bruce also testified that he had testified in court 40 or 50 times relating to these cases. He testified that he was familiar with the habits of heroin users and heroin sellers. In light of the foregoing, the trial court did not abuse its discretion in permitting Bruce to testify as to the quantity of heroin which is normally possessed for sale.

## CHAIN OF CUSTODY

■ Appellant next contends that the heroin seized in his apartment should not have been admitted into evidence because a proper chain of custody had not been established. The detectives who discovered

the heroin in appellant's apartment testified that they found a plastic bag containing pieces of tin foil folded triangularly. From the manner in which the tin foil was folded, the detectives believed the pieces of tin foil to contain heroin. However, they did not open the plastic bag nor the individual tin foil packets because they did not want to destroy any fingerprints which those items may have contained.

After seizing the plastic bag, Detective Robinson placed it inside a larger plastic bag on which he placed the departmental report number, his initials, an evidence tag and his name tag. Testimony at trial revealed that the contents of the bag had been altered somewhat as a result of fingerprint and chemical analyses which had been performed. However, Robinson was able to identify the exhibit by his report number and his initials.

Although the prosecution did not establish every link in the custody chain as the exhibit proceeded through the various laboratory analyses, there was no evidence that anyone other than the laboratory technicians and the property custodians handled the exhibit. Furthermore, appellant makes no claim that the heroin had been tampered with or that it was not heroin that was found in his apartment. As the court stated in *State v. Lopez,* 23 Ariz.App. 554, 534 P.2d 768 (1975):

. . . However, in establishing the chain of possession the prosecution need not call forth every person who comes in contact with the evidence where there is nothing to suggest the probability of substitution or tampering. *State v. Davies,* supra [110 Ariz. 51, 514 P.2d 1239]; *State v. Hodges,* 109 Ariz. 196, 507 P.2d 121 (1973); Udall, Evidence § 131 (1960).

The ultimate decision of whether sufficient foundation has been laid is within the sound discretion of the trial court. *State v. Noble,* 109 Ariz. 539, 514 P.2d 460 (1973). In the instant case, there

was no suggestion of tampering in the chain of possession from the narcotics officer to the chemist. In addition, the officer testified that the exhibit tested by the chemist was identifiable to him by his departmental report number, placed there by him, as being the same packet received from the defendant and was substantially in the same condition as when he placed it in the property room. Finally, no issue was raised that the Exhibit 1 was not heroin. Under these circumstances we find no abuse of discretion in admitting the exhibit into evidence. [23 Ariz.App. at 556, 534 P.2d at 770]

While the chain of custody in the present case was imprecise, given the absence of any suggestion of specific misconduct with respect to the exhibit, we cannot say that the trial court abused its discretion in allowing the heroin to be admitted into evidence.

## CONDUCT OF THE PROSECUTOR

Appellant next contends that he was denied a fair trial due to improper comments by the prosecutor during his closing statement to the jury and due to improperly elicited testimony from the arresting police officer regarding appellant's exercise of his right against self-incrimination.

The prosecutor made the following comments in his closing statement to the jury: "there have been some issues in this case that the defense hasn't barked about, and they're largely the issues that are important," and "the state called every police officer that heard that confession, and the state's evidence is uncontradicted."

Appellant argues these statements referred to his refusal to take the witness stand. To the contrary, the statements appear to have been made only to emphasize appellant's failure to contradict the evidence presented against him. As such, the statements are clearly permissible. *State*

v. *Byrd,* 109 Ariz. 10, 503 P.2d 958 (1972). Furthermore, the test for determining the propriety of the prosecutor's remarks was stated in *State v. Berryman,* 106 Ariz. 290, 475 P.2d 472 (1970).

> The true test is, was the reference calculated or intended to direct the attention of the jury to the defendant's neglect to avail himself of his right [to testify]? [106 Ariz. at 294, 475 P.2d at 476]

· The prosecutor's remarks in the present case were not intended to direct the attention of the jury to appellant's failure to testify.

■ As to appellant's second argument, the arresting officers testified that appellant failed to respond or responded "I don't know" to several questions asked by the officers at the time of his arrest. Appellant claims this testimony improperly brought out the fact that appellant had invoked his Fifth Amendment right not to answer the officer's questions.

■ Although it is improper to introduce evidence of an accused's silence in reply to questions asked when he is in custody, *State v. Shing,* 109 Ariz. 361, 509 P.2d 698 (1973), appellant here did not refuse to answer the questions nor did he specifically exercise his right to remain silent. Furthermore, shortly after these responses, appellant confessed to the crime.

The testimony elicited from the officers in this case is not as questionable as that described in *State v. Finn,* 111 Ariz. 271, 528 P.2d 615 (1974), in which the defendant told the police officers that "I wouldn't be crazy enough to tell you that." The court held that this response was admissible. The court stated that this was a "middle ground" between a refusal to answer and a normal response to a question which indicated a willingness not only to answer but also that the questioning be continued. Appellant's responses of "I don't know" and an occasional silence in response to the detective's questioning are also in this middle ground and properly admissible as part of appellant's subsequent confession. Under the circumstances of this case, the trial court did not abuse its discretion in admitting the evidence.

■ Appellant next contends that certain arguments by the prosecutor in his closing argument were prejudicial. The prosecutor made repeated remarks belittling appellant's defense. However, appellant did not object to any of these arguments in the trial court. If appellant had objected, a proper admonition or instruction to the prosecutor to refrain from making such comments could have been given. Because appellant did not object at the trial court, he cannot raise his objection to the comments on appeal. *State v. Kelley,* 110 Ariz. 196, 515 P.2d 569 (1973).

■ Finally, appellant contends that the prosecutor in his closing argument personally vouched for the credibility of one of the detectives who testified. Appellant did not object to the argument at the time of trial. On appeal, appellant contends that in personally vouching for the credibility of his crucial witness, the prosecutor committed reversible error. We agree that a prosecutor should not make statements vouching for the credibility of a witness. See Annot. 81 A.L.R.2d 1240 (1962). However, appellant did not object to his argument at trial and we will not consider it for the first time on appeal.

Judgment affirmed.

DONOFRIO, P. J., and OGG, J., concurring.